**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FRANKLIN J. BURMEISTER**, *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **Civil Action No. 12-973 (RMC)** |
| | ) |
| **PENSION BENEFIT GUARANTY** | ) |
| **CORPORATION,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**OPINION**

What happens when a union and employer agree to change the employee pension plan but the plan never gets changed, the agreed change is dropped from the next contract, the employer goes bankrupt, and the Pension Benefit Guaranty Corporation takes over pension payments?  In determining pension benefits, can PBGC rely on the formal plan documents and most recent collective bargaining agreement or must it sift through the parties' prior contract negotiations and apply agreed-upon changes that are not reflected in the plan or the last contract?

Once the facts are sorted and the questions clarified, the answers are plain. Plaintiffs are (1) a former employee of Sandusky, Limited and (2) his representative union.  They complain that PBGC has underpaid Mr. Burmeister's pension benefit because PBGC ignored negotiated changes to benefit terms embodied in a 1999-2002 collective bargaining agreement, before PBGC assumed responsibility in 2006.  Two things are clear: whatever the meaning of the parties' negotiations in 1999, their agreement to change benefits was never reflected in an amendment to the pension plan and was not included in the 2002-2007 collective bargaining

1

agreement (during which Sandusky filed for bankruptcy protection).  The Court finds that PBGC's Appeals Board did not violate the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, when it concluded that PBGC correctly determined Plaintiff Franklin Burmeister's monthly pension benefit in 2011 according to the terms of the pension plan without the temporary 1999-2002 contract change.  Accordingly, PBGC's motion for summary judgment will be granted and Plaintiffs' cross-motion for summary judgment will be denied.

## I.  FACTS

Plaintiff Franklin Burmeister was formerly employed by Sandusky, Limited and was represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local 1957 ("UAW") during his employment there.  The UAW is also a Plaintiff.  The UAW represented a bargaining unit of Sandusky employees for many years and negotiated repeated collective bargaining agreements on their behalf.  Defendant Pension Benefit Guaranty Corporation ("PBGC") is a wholly-owned government corporation created under federal law to administer the pension termination insurance program established under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301-1461.  *See id.* § 1302.  When an underfunded pension plan covered under Title IV terminates, PBGC typically becomes the statutory trustee and pays benefits to participants and beneficiaries under the plan, subject to statutory limits.  *See id.* §§ 1341, 1342.

Sandusky established the Sandusky, Limited Pension Plan for Hourly Employees (the "Plan") effective January 1, 1972.  Sandusky maintained the Plan separate from its Collective Bargaining Agreement ("CBA"), but the CBA identified and incorporated the Plan. The UAW negotiated a collective bargaining agreement covering 1999 to 2002 ("1999-2002 CBA") on behalf of Sandusky's employees.  Plaintiffs allege that during the negotiations leading

up to the 1999-2002 CBA, "the parties agreed to eliminate all reduction factors in the pension plan" for those employees retiring early.  Compl. ¶ 7.  The relevant paragraph of the 1999-2002 CBA provided:

> PENSIONS
>
> (92)  Pension Plan
> A non-contributory pension plan is set forth in a Summary Plan Description, Plan Description and other documents are a part of this Agreement.  [sic]
>
> This includes an increase in defined benefits of $1.50 in each of the last two (2) years of the Agreement and an *elimination of reduction factors*.

*See* Pl. Mem. in Supp. of Mot. for Summ. J. ("Pl. Mem.") [Dkt. 17-2] at 4 (emphasis added).

Sandusky amended the Plan in 2000 and subsequently amended and restated it, effective January 1, 2003.  AR 10.  Plaintiffs allege that when Sandusky amended and restated the Plan in 2003, Sandusky failed to include the elimination of pension reduction factors in the Plan as required by the 1999 collective bargaining negotiations.  They also allege that neither the UAW nor any bargaining unit employee was part of the Plan update process.  The parties agree, however, that the terms of the Plan as of January 1, 2003, required that a participant's benefit be reduced for early retirement (unless certain exceptions, not applicable here, applied).

Sandusky and the UAW reached agreement on a new collective bargaining agreement, effective July 1, 2002 to July 1, 2007 ("2002-2007 CBA"), which replaced the predecessor 1999-2002 CBA.  Plaintiffs acknowledge that the relevant terms in the 2002-2007 CBA were changed and stated:

> PENSIONS
>
> (73) Pension Plan

> A non-contributory pension plan is set forth in a Summary Plan
> Description, Plan Document and other documents are a part of this
> Agreement.  [sic]
>
> This includes an increase in defined benefits of $1.50 in the first (1) year
> of the Agreement and $2.00 each subsequent year during the life of this
> Agreement.
>
> A pension bonus of $15.00 for each year of continuous service will
> continue to be paid at employee's retirement date.

AR 127.  Plaintiffs do not dispute that the 2002-2007 CBA did not contain a provision

eliminating pension reduction factors for early retirees.

On November 8, 2006, Sandusky filed for bankruptcy protection under Chapter

11 of the United States Bankruptcy Code, 11 U.S.C. § 1101 *et seq.*  Sandusky ceased all

operations on December 22, 2006.  Pursuant to 29 U.S.C. § 1348, the Plan was terminated

effective December 22, 2006, and PBGC became the statutory trustee of the Plan.

Mr. Burmeister began working at Sandusky in October 1970 and was actively

employed by Sandusky until December 22, 2006 when operations ceased.  He retired on

February 1, 2010, at 60 years of age.[1]  Prior to his retirement, Mr. Burmeister applied to PBGC

for pension benefits under the Plan.  *See* 29 C.F.R. § 4003.21 (stating PBGC's role in provision

of benefits).  PBGC informed Mr. Burmeister of its estimation of his monthly pension benefit by

letter dated January 12, 2010.  AR 299-300.  Mr. Burmeister's pension benefit had been

actuarially reduced by .6667 because he retired before the Plan's Normal Retirement Age of 65.

*See* AR 22 (Plan Art. 1.31, defining "Normal Retirement Age"); AR 288 (Benefit Calculation).

Thus, rather than a pension of approximately $1,000/month, PBGC notified Mr. Burmeister that

he would receive an estimated pension of $736.70/month, beginning on February 1, 2010.  AR

299-300.  On January 25, 2011, after further uncontested calculations, PBGC notified Mr.

---

[1] Mr. Burmeister was born in 1950.  Compl. ¶ 4.

Burmeister that his monthly benefit had been recalculated to be $702.87.  AR 284-90.  Mr.

Burmeister appealed the decision to PBGC's Appeals Board[2] and asked that the Plan be

reformed to be consistent with the 1999-2002 CBA that included the provision providing for the

"elimination of reduction factors."

By decision dated June 8, 2011, PBGC's Appeals Board denied Mr. Burmeister's

appeal.  The Appeals Board concluded that the terms of the Plan required PBGC to reduce Mr.

Burmeister's pension benefit because he began receiving retirement benefits prior to the Normal

Retirement Age and none of the exceptions applied.[3]  AR 5-6.  The Appeals Board also found

that the 2002-2007 CBA replaced the 1999-2002 CBA and that "the CBA that was in effect

when the Plan terminated is fully consistent with the Plan documents PBGC used."  AR 8.

Further, the Appeals Board concluded that "all available Plan documents and collective

bargaining agreements are consistent with the benefit PBGC determined."  *Id.*

Mr. Burmeister and the UAW filed suit on June 15, 2012.[4]  They seek a court

order requiring PBGC to reform the Plan and to recalculate Mr. Burmeister's pension benefit

without an early-retirement reduction.  Their main contention is that PBGC failed to apply the

provision in the 1999-2002 CBA that eliminated reduction factors from the Plan.  PBGC

responds that the provision on which Plaintiffs rely was not in effect on the Plan's December 22,

2006 termination date because the 2002-2007 CBA had replaced the 1999-2002 CBA and the

Plan itself was never amended to incorporate any such change.  Therefore, PBGC argues, the

Appeals Board correctly determined that Mr. Burmeister's pension benefit was subject to an

---

[2] *See* 29 C.F.R. § 4003.51 (governing appeals).

[3] There is no dispute concerning the inapplicability of the exceptions.

[4] An Appeals Board decision constitutes final agency action, *see* 29 C.F.R. § 4003.59(b), and the appellant may seek judicial review of the Board's decision, *see* 29 U.S.C. § 1303(f)(1).

actuarial reduction factor for early retirement under the terms of the Plan and he is not entitled to Plan reformation.

## II. LEGAL STANDARDS

### A. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "In a case involving review of a final agency action under the Administrative Procedure Act, 5 U.S.C. § 706, however, the standard set forth in Rule 56[ ] does not apply because of the limited role of a court in reviewing the administrative record." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006); *see also Charter Operators of Alaska v. Blank*, 844 F. Supp. 2d 122, 126–27 (D.D.C. 2012); *Buckingham v. Mabus*, 772 F. Supp. 2d 295, 300 (D.D.C. 2011). Under the APA, the agency's role is to resolve factual issues to reach a decision supported by the administrative record, while "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club*, 459 F. Supp. 2d at 90 (quoting *Occidental Eng'g. Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985) (internal quotation marks omitted)). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.* (citing *Richards v. INS*, 554 F. 2d 1173, 1177 & n. 28 (D.C. Cir. 1977)).

### B.  Administrative Procedure Act

A reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see Tourus Records, Inc. v. DEA*, 259 F.3d 731, 736 (D.C. Cir. 2001).  The basic legal tenets here are longstanding and clear: A reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotation marks omitted).  At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made."  *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986) (internal quotation marks and citation omitted); *see also Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993) ("The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result.").  An agency action is arbitrary or capricious

> if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."  *Id.*  Rather, agency action is normally "entitled to a presumption of regularity."  *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

# III.  ANALYSIS

It bears stating at the outset that the issue before the Court is whether PBGC's Appeals Board complied with the requirements of the APA when it concluded that PBGC correctly determined Mr. Burmeister's monthly pension benefit.  It is *not* whether Sandusky violated any contract term when it did not amend the Plan in 2000 to eliminate reduction factors as provided in the 1999-2002 CBA or when it did not include such language in the 2002-2007 CBA and then restated the Plan in 2003 without eliminating reduction factors.

The facts are not disputed.  Mr. Burmeister applied for pension benefits before the Normal Retirement Age of 65 under the Plan.  The Plan requires an actuarial reduction for early retirement benefits unless certain inapplicable exceptions (Disability Retirement, Early Retirement Window, or Special Early Retirement) apply.  Mr. Burmeister did not qualify for any exception.  No provision in the 2002-2007 CBA—the collective bargaining agreement in effect when the Plan terminated on December 22, 2006—required elimination of reduction factors for early retirees.  The Court finds that the provisions of the Plan and the collective bargaining agreement in effect when the Plan terminated fully support the decision of the Appeals Board sustaining PBGC's calculations of Mr. Burmeister's monthly pension benefit.

Plaintiffs do not contend that the Appeals Board misread the 2002-2007 CBA or that it was not the effective collective bargaining agreement as of December 22, 2006, when PBGC took over the Plan.  Instead, acknowledging the absence of relevant language in that contract, they ask the Court to require PBGC to reform the Plan to include terms from the 1999-2002 CBA.  Harking back to the *Steelworkers Trilogy*, Plaintiffs argue that a collective bargaining agreement "is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate."  *United Steelworkers of Am. v. Warrior &*

*Gulf Navigation Co.*, 363 U.S. 574, 578-79 (1960); *see also United Steelworkers of Am. v. Enter.*

*Wheel & Car Corp.*, 363 U.S. 593 (1960); *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S.

564 (1960).  Plaintiffs correctly contend that the principles that govern ordinary commercial

contracts do not necessarily apply to collective bargaining agreements.[5]  *John Wiley & Sons, Inc.*

*v. Livingston*, 376 U.S. 543, 550 (1964); *see also Transp.-Commc'n Emps. Union v. Union Pac.*

*R.R. Co.*, 385 U.S. 157, 160-61 (1966) ("A collective bargaining agreement is not an ordinary

contract for the purchase of goods and services, nor is it governed by the same old common-law

concepts, which control such private contracts.").  They argue that the Appeals Board failed to

appreciate the special nature of collective bargaining agreements which required it to interpret

broadly the elimination of reduction factors in the 1999-2002 CBA and apply it to *all* factors for

subsequent retirees.  They also argue that the Appeals Board was arbitrary and capricious when it

found that the agreement to eliminate reduction factors did not extend beyond the expiration of

the 1999-2002 CBA.  To quote Plaintiffs, "Once eliminated[,] the reduction factors stayed

eliminated.  The Appeals Board wrongly decided otherwise."  Pl. Mem. at 11.

       Plaintiffs' argument does not reflect the legitimate scope of collective bargaining

or their contracts.  While the 1999-2002 CBA may have eliminated "all" factors that could

reduce an employee's pension payment, by the 2002 negotiations, the parties' focus appears to

have been elsewhere.  The language concerning elimination of reduction factors was omitted and

additional contributions and a bonus on retirement included.  Thus, only an employee who

happened to retire during the term of the 1999-2002 CBA enjoyed the benefit of the "elimination

---

[5] Plaintiffs also cite *Broccardo v. Freeman United Coal Mining Co.*, 102 F. App'x 501 (7th Cir. 2004) and *Wilson v. Moog Auto., Inc. Pension Plan*, 193 F.3d 1004 (8th Cir. 1999), for the propositions that a collective bargaining agreement and a plan must be read together, and if a plan conflicts with the collective bargaining agreement, the plan should be reformed to reflect the provisions in the contract.  These cases are inapposite.  Here, the provisions in the Plan and the 2002-2007 CBA do not conflict, so no interpretive issue arises.

of reduction factors" that the Union had obtained in that contract.  As the employees' exclusive bargaining representative, the Union had full authority to negotiate for the best terms it could, even if achieving a contract for 2002-2007 meant foregoing a benefit obtained only in the predecessor contract.[6]  It may well be that given Sandusky's later collapse, the UAW and represented employees rue the change they accepted in the 2002-2007 contract, but hindsight cannot change the terms of the collective bargaining agreement as it existed when PBGC became responsible for pension benefits.  Nor can hindsight require reformation of the Plan to introduce a benefit (no actuarial reduction upon early retirement) that was neither in the Plan nor the contract as of December 22, 2006.  This is not an instance of the Union and Sandusky agreeing to change the Plan in negotiations but Sandusky failing to reflect that change in Plan documents.  Plaintiffs might have a better argument in such a scenario.  Here, however, the elimination of reduction factors was only included in the 1999-2002 CBA and was not a provision in the subsequent collective bargaining agreement in effect from 2002-2007.  There is thus no true conflict between the contract in effect when the Plan terminated and the provisions of the Plan to support a challenge to the Appeals Board's final decision on Mr. Burmeister's monthly pension benefit.

---

[6] Pension benefits for active employees constitute a mandatory subject of bargaining.  *See Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co., Chem. Div.*, 404 U.S. 157, 159 (1971) ("Under the National Labor Relations Act, as amended, mandatory subjects of collective bargaining include pension and insurance benefits for active employees."); *S. Nuclear Operating Co. v. NLRB*, 524 F.3d 1350, 1356 (D.C. Cir. 2008) (explaining that the Supreme Court has "made clear that retirement benefits for current employees *are* mandatory bargaining subjects").  The parties to a collective bargaining agreement can negotiate to increase or decrease such benefits in light of economic constraints or other more desired contract terms.  Despite the Plaintiffs' argument, there is nothing immutable about pension benefits as a topic for collective bargaining.

**IV.  CONCLUSION**

For the reasons stated above, PBGC's Motion for Summary Judgment [Dkt. 14]

will be granted, and Plaintiffs' Cross-Motion for Summary Judgment [Dkt. 17] will be denied.  A

memorializing Order accompanies this Opinion.

Date:  May 6, 2013                                    _____/s/_____
                                                     ROSEMARY M. COLLYER
                                                     United States District Judge